UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| STEPHEN BURKE, et al., )<br>)<br>Plaintiffs, )<br>)<br>V. )<br>)<br>KENTUCKY STATE POLICE, and )<br>RODNEY BREWER, in his official )<br>capacity as Kentucky State Police )<br>Commissioner, )<br>)<br>Defendants. ) | Civil No. 14-cv-00024-GFVT-EBA<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Various current and former Kentucky State Police officers and Commercial Vehicle Enforcement officers, who have at some point been assigned duties as K9 officers, bring suit against the Kentucky State Police and Commissioner Rodney Brewer for increased overtime compensation related to their care and maintenance of the police dogs. The Defendants have moved for summary judgment on the Plaintiffs' claims, and for the reasons that follow, the Court GRANTS the Defendants' motion as to Fair Labor Standards Act claim and REMANDS the Plaintiffs' remaining state law contract claim for further consideration by the state court.

**I**

**A**

The nine Plaintiffs are currently employed, or within the last three years have been employed, as either Commercial Vehicle Enforcement ("CVE") or Kentucky State Police ("KSP") K9 officers. [R. 1-3 at 4.] As K9 officers, the Plaintiffs have or previously had "full

responsibility for the care, custody, control, and maintenance of their respective canine charges." [*Id.*]  The dogs reside at the officers' personal residences, and the Plaintiffs indicate that all K9 CVE and KSP officers have various responsibilities above and beyond those duties related to the dogs' handling in the field.  [*Id.* at 5.]  According to the Plaintiffs, their personal "canine maintenance" duties include activities such as feeding, grooming, bathing, training, medicating, and transporting the dogs to veterinarians.  [*Id.*]  To facilitate care of the dogs outside of the time the dogs are actually used for work-related duties, K9 officers are currently compensated for an additional five hours of work per week.  [R. 18 at 2-3.]

In March 2014, the Plaintiffs filed suit against the KSP and Commissioner Rodney Brewer in his official capacity in Franklin Circuit Court, seeking increased compensation for their care of the dogs.  [R. 1-3.]  [R. 1.]  The Plaintiffs seek overtime wages on two separate theories.  Count One of the Plaintiffs' complaint alleges a violation of the Fair Labor Standards Act, specifically 29 U.S.C. § 207.  [R. 1-3 at 7-8.]  Count Two of the Plaintiffs' complaint seeks relief based on a settlement agreement, stemming from a 2000 Kentucky Personnel Board action to which CVE, but not KSP, was a party.[1]  [*Id.* at 8.]  Plaintiffs intend for this cause of action to be read as a breach of contract claim.  [R. 19 at 12.]  Though not entirely clear from the complaint itself, the Plaintiffs appear to be arguing the terms of the settlement agreement[2] should apply to them today, despite the KSP takeover of CVE in July 2008.  [R. 1-3 at 7; R. 19 at 12-13.]

---

[1] Kentucky State Police assumed control of Commercial Vehicle Enforcement in July 2008.  [R. 1-3 at 7.]  Thus, KSP itself was not a party to the Kentucky Personnel Board action relied upon by the Plaintiffs.
[2] The parties identify this agreement as an October 17, 2000, settlement, arising from the Kentucky Personnel Board action *William Adams et al. v. Transportation Cabinet*, Appeal Nos. 99-344, 99-345, 99-349, and 99-350.

2

On April 2, 2014, Defendants removed the Plaintiffs' suit to federal court, based on this Court's federal question jurisdiction of the Fair Labor Standards Act claim and supplemental jurisdiction of the additional claim. [R. 1; *see also* 28 U.S.C. §§ 1331, 1367.] Defendants then moved for summary judgment on both claims. [R. 18.]

**B**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to inform "the district court of the basis of its motion, and [to identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a

genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## II

### A

In general, states are immune from claims brought against them by private persons in federal court. *See, e.g.*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); U.S. CONST. amend. XI. Eleventh Amendment immunity extends to a public agency if "said agency or institution can be characterized as an arm or alter ego of the state." *Hall v. Med. Coll. of Oh.*, 742 F.2d 299, 301 (6th Cir. 1984). In this case, Kentucky State Police is an arm of the state, entitled to the same Eleventh Amendment immunity as the Commonwealth of Kentucky. *See Barnes v. Hamilton*, 946 F.2d 894, 1991 WL 203113, at *2 (6th Cir. 1991) (unpublished); *Baughman v. Brooks*, No. 5:15-cv-29-JMH, 2-15 WL 3916150, at *2 (E.D. Ky. June 25, 2015); *Fleming v. Kentucky State Police*, No. 3:09-35-DCR, 2010 WL 881907, at *2-3 (E.D. Ky. March 5, 2010). Further, Commissioner Rodney Brewer, who is sued solely in his official capacity, is the functional equivalent of the KSP for purposes of this lawsuit. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("Individuals sued in their official capacities stand in the shoes of the entity they represent); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."). Accordingly, both Defendants are entitled to Eleventh Amendment immunity from suit in federal court, unless an exception applies.

Eleventh Amendment immunity is not absolute.  Congress may abrogate a state's immunity pursuant to its Fourteenth Amendment powers, *see Alden v. Maine*, 527 U.S. 706, 756 (1999), or a state may waive its immunity, *see Sossamon v. Texas*, 563 U.S. 277, 284-85 (2011). "But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011). Congress has not abrogated Kentucky's immunity from Fair Labor Standards Act claims.  *See Jackson v. Comm.*, 129 F.3d 1264 (6th Cir. 1997); *Wilson-Jones v. Caviness*, 99 F.3d 203 (6th Cir. 1996), *modified*, 107 F.3d 358 (6th Cir. 1997).   The relevant question, then, is whether the state has somehow waived its immunity from FLSA suits.

A state may waive immunity in a number of ways.  First, it may waive immunity expressly, by very clearly articulating its consent to be sued in federal court.  *See Sossamon*, 563 U.S. at 284-85.  Second, a state may waive its immunity through its litigation conduct.  *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). Kentucky has not clearly consented to federal court jurisdiction over FLSA claims.  *See Jackson,* 129 F.3d 1264; *see also Berry v. Office of the Fayette Cnty. Sheriff*, No. 5:14-356-DCR, 2014 WL 6390174, at *1 (E.D. Ky. Nov. 14, 2014).  The Plaintiffs, however, argue KSP waived immunity not expressly but impliedly through its litigation conduct—namely, by removing the lawsuit to federal court.  [*See* R. 19 at 8-10.]

The Circuit Courts are split as to whether voluntarily removing a lawsuit to federal court constitutes a waiver of the state's immunity.  Confusion over the issue stems from the United States Supreme Court's 2002 decision *Lapides v. Board of Regents*.  535 U.S. 613.  In that case, a professor employed by the Georgia state university system filed a lawsuit in a Georgia state

5

court, alleging various federal and state civil rights violations. *Id.* at 616. The state—which had already waived immunity in Georgia state court pursuant to a state statute—voluntarily removed the case to federal court, attempting to seek Eleventh Amendment immunity. *Id.* The Supreme Court found it unfair for the state to "regain immunity" by removing the case; focusing on "the judicial need to avoid inconsistency, anomaly, and unfairness" through litigation conduct, the court concluded the state's removal waived its Eleventh Amendment immunity. *Id.* at 620-24. Towards the start of its opinion, the court indicated an intent to limit its holding to the factual framework presented by *Lapides*: "[i]t has become clear that we must limit our answer to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." *Id.* at 617.

Courts across the country have interpreted *Lapides* in different ways. Some have emphasized the limit on the *Lapides* holding expressed above. These courts refuse to find a waiver of immunity where a state removes a federal claim for which it has not waived immunity in its own courts. *Bergemann v. Rhode Island Dept. of Environmental Mgmt.*, 665 F.3d 336 (1st Cir. 2011); *Stewart v. North Carolina*, 393 F.3d 484 (4th Cir. 2005); *Watters v. Wash. Metro. Area Transit Authority*, 295 F. 3d 36, 42 n. 13 (D.C. Cir. 2002). In *Stewart*, the Fourth Circuit determined that *Lapides* did not apply because North Carolina had never consented to suit in its own state courts. 393 F.3d at 487-90. Therefore, the state did not seek to "regain" any immunity by removing the case to federal court, and the concern about "unfair tactical advantages" in *Lapides* was essentially irrelevant. *Id.* at 487, 490. The court held North Carolina could "employ removal in the same manner as any other defendant facing federal claims." *Id.* at 490. Similarly, the First Circuit found in *Bergemann* that, where Rhode Island was immune from suit

in both state *and* federal court, removal did not constitute a waiver of immunity.  665 F.3d at 339-43.  The court reasoned:

> In the case at hand, Rhode Island's sovereign immunity defense is equally as robust in both the state and federal court.  Consequently, there is nothing unfair about allowing the state to raise its immunity defense in the federal court after having removed the action.  Simply put, removal did not change the level of the playing field.

*Id.* at 342.

Other circuits have applied *Lapides* more broadly.  These courts find the Supreme Court case imposed a general presumption that removal equates consent to jurisdiction, regardless of whether a waiver of immunity occurred at the state-court level.  *Lombardo v. Pennsylvania*, 540 F.3d 190 (3rd Cir. 2008); *Embury v. King*, 361 F.3d 562 (9th Cir. 2004); *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236 (5th Cir. 2005).  These courts generally recognize the Supreme Court's statement arguably limiting *Lapides'* holding to factually similar situations, but find the language of the decision to be broad and properly applied to additional factual scenarios.  *Meyers*, 410 F.3d at 242-43 (holding *Lapides* "applies generally to any private suit which a state removes to federal court" because there is no basis for limiting the principles set forth in *Lapides* but "many reasons to apply those principles generally").  The Third Circuit has stated:

> Despite expressly limiting its holding to state-law claims from which immunity has been explicitly waived, the *Lapides* Court utilized broad language regarding waiver and removal. . . . Applying these principles to the matter at hand, we conclude that the Commonwealth waived its Eleventh Amendment immunity from private suit in a federal forum when it voluntarily removed this case to a federal court.  When a State, facing suit in its own courts, purposefully requests a federal forum, it expresses a clear intent to waive immunity from suit.

*Lombardo*, 540 F.3d at 196-97.

In addition, some courts have articulated two types of sovereign immunity, finding a state may waive its Eleventh Amendment immunity by removal but may also retain the distinct possibility of "immunity from liability." *Stroud v. McIntosh*, 722 F.3d 1294, 1303-04 (11th Cir. 2013); *see also Trant v. Oklahoma*, 754 F.3d 1158, 1171-73 (10th Cir. 2014); *Meyers*, 410 F.3d at 253-55. While most circuits have taken one of the three positions, the Sixth Circuit, which controls this Court, has yet to take a clear stance. In the absence of binding Sixth Circuit precedent, the Plaintiffs ask the Court to adopt the approach set forth in the Fifth Circuit *Meyers* case, which accepts the principles found in *Lapides* as generally applicable. [R. 19 at 10.]

The Court hesitates to adopt the Fifth Circuit's approach and is not convinced the Defendants' actions here waived their Eleventh Amendment immunity. Though the Sixth Circuit has not specifically articulated its view on whether removal of a federal claim constitutes waiver of immunity, two Sixth Circuit decisions do mention the limiting language used by the Supreme Court in *Lapides* in other contexts. *Agrawal v. Montemagno*, 574 F. App'x 570, 573 (6th Cir. 2014) ("*Lapides* is limited to state law claims for which the state has waived or abrogated its immunity from damages claims in the state trial courts."); *Dantz v. American Apple Group, LLC*, 123 F. App'x 702, 706-07 (6th Cir. 2005) (recognizing the holding of Lapides was "limited 'to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings'"). Another case mentions that the *Lapides* court "did not go so far as either to . . . treat the Eleventh Amendment immunity defense as one, like the defense of lack of personal jurisdiction, that can be permanently waived when a State fails to raise the objection at the outset of proceedings." *Ku v. State of Tennessee*, 322 F.3d 431, 434

(6th Cir. 2003). These decisions encourage the Court to conservatively apply the *Lapides* holding.

Further, other Sixth Circuit cases addressing waiver through litigation conduct do not mandate a finding that the Defendants waived their immunity by removing the case to federal court. In *Ku v. State of Tennessee*, the state engaged in extensive discovery, moved for summary judgment, and then raised the immunity issue in a motion for a stay pending appeal of the district court's order. The court found Tennessee waived its immunity, in great part because it never raised the defense until there was already an unfavorable judgment in place against the state. *Id.* at 432. In *Barachkov v. Davis*, the state raised sovereign immunity in its answer to the complaint but never filed a Rule 12(b)(1) motion to dismiss, failed to raise the issue of immunity in its motion for summary judgment, but did raise the issue in its reply brief. 580 F. App'x 288, 300 (6th Cir. 2014). The court found the state had not waived its immunity, because the state's "somewhat belated assertion of sovereign immunity" did not appear to be a "strategic decision." *Id.* Distinguishing *Ku*, the court held the state's "litigation conduct was neither unfair nor inconsistent, and it cannot be said that its dilatory assertion of sovereign immunity was but a tactical decision." *Id.*

The matter at hand is more like *Barachkov* than like *Ku*. The Defendants did not waive their Eleventh Amendment immunity at the state-court level before removing the suit to federal court, and nothing indicates they have been unduly slow in raising the defense. Though they do not assert immunity as a defense in their answer and never filed a Rule 12(b)(1) motion to dismiss, they did not file any motions to dismiss the case on the merits either. *See id.* Further, their motion for summary judgment is chiefly concerned with the Eleventh Amendment

9

immunity issue. The Defendants do not ask the Court to consider the merits of the FLSA claim; they ask to be found immune from it altogether, suggesting their motion for summary judgment in reality acts as the same "threshold defense" that would normally be styled as a motion to dismiss. *See Nair v. Oakland Cnty. Comm. Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006) (indicating that, to avoid waiver, a state should generally "invoke its sovereign immunity as a threshold defense, usually by way of a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure").

Overall, the Court does not find anything inconsistent or tactically unfair about allowing the Defendants to assert Eleventh Amendment immunity for the federal claim which they permissibly removed to federal court. Another Eastern District of Kentucky court has also adopted a conservative approach to the application of *Lapides* and, while not binding precedent, the Court finds its reasoning persuasive. *See Crawford v. Lexington-Fayette Urban Cnty. Govt.*, No. 06-299-JBC, 2007 WL 101862, at *4-6 (E.D. Ky. Jan. 10, 2007) (adopting the Fourth Circuit's limited view of *Lapides* rather than the Fifth Circuit's broader stance). The Court cannot find the Defendants waived their immunity by removal when they could have asserted the same defense at the state level. "Because [the state] has consistently maintained its immunity to FLSA claims (wherever brought), the state did not waive its immunity by removing the instant action to federal court." *Bergemann*, 665 F.3d at 343. Accordingly, the Plaintiffs' FLSA claim against Defendants is hereby DISMISSED.

**B**

Federal courts are courts of limited jurisdiction. In order to hear a suit, the Court must have subject-matter jurisdiction over it. *See, e.g., Thornton v. Southwest Detroit Hosp.*, 895 F.2d

1131, 1133 (6th Cir. 1990) (explaining a "federal court lacks authority to hear a case without subject matter jurisdiction"). The Plaintiffs' FLSA claim was removable to this Court because the claim arises under federal law. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The Plaintiffs' second claim, for breach of contract related to the Kentucky Personnel Board settlement agreement, is not a federal question but rather was removed to this Court on the basis of supplemental jurisdiction. *See* 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Without the federal question FLSA claim, however, there is no longer a basis for supplemental jurisdiction over the breach of contract claim.

Having already dismissed the claim arising under federal law, any remaining state law claims are best reserved for the state courts. *See, e.g., Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (holding that "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state law claims") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Accordingly, the Plaintiffs' breach of contract claim found in Count Two of the complaint is properly REMANDED.

### III

Therefore, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Motion [R. 18] is **GRANTED** as to Count One of the Plaintiffs'

Complaint;

2. Count One of the Plaintiffs' Complaint regarding the alleged Fair Labor Standards Act violation is **DISMISSED WITH PREJUDICE**;

3. Count Two of the Plaintiffs' Complaint regarding the 2000 settlement agreement is **REMANDED** for further consideration by the state court;

4. Any pending motions [R. 35; R. 36; R. 44] are **DENIED, AS MOOT**;

5. The upcoming Final Pretrial Conference and Jury Trial are **CANCELLED**; and

6. This case is **STRICKEN** from the Court's active docket.

This the 27th day of January, 2016.

Gregory F. Van Tatenhove
United States District Judge